**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:21-cr-736-5 |
| | ) | |
| PLAINTIFF, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| LUCIAN BLACKWELL, | ) | |
| | ) | |
| DEFENDANT. | ) | |

On March 3, 2023, defendant Lucian Blackwell ("Blackwell") was sentenced to a custody term of 120 months, to be followed by 5 years of supervised release. (Doc. No. 250 (Judgment); Minutes of Proceedings [non-document], 3/3/2023.) Blackwell is serving his sentence at FCI Hazelton and has an anticipated release date of August 11, 2030.[1] Now before the Court is Blackwell's motion, as supplemented, for compassionate release. (Doc. No. 351 (Motion); Doc. No. 379 (Supplemental Motion).) The government opposes the motion. (Doc. No. 393 (Response); *see* Doc. No. 394-1 (Sealed Federal Bureau of Prisons ("BOP") Medical Records).) For the reasons that follow, Blackwell's motion for compassionate release is DENIED.

I. **BACKGROUND**

On February 2, 2022, a superseding indictment issued charging Blackwell and 12 other individuals in a drug trafficking conspiracy that was responsible for transporting large quantities of illegal narcotics, including methamphetamine, from Cleveland, Ohio, South Carolina and elsewhere, into the Akron, Ohio area for redistribution. (Doc. No. 34 (Superseding Indictment).) On March 31, 2022, Blackwell filed a motion to revoke the magistrate judge's order of detention.

---
[1] *See* https://www.bop.gov/inmateloc/, last visited 10/21/2024.

(Doc. No. 122.) The motion was premised, in part, on Blackwell's stated need to receive physical therapy and medical care for a gunshot wound on his left arm and his diabetic foot ulcers. (*Id*. at 2.[2]) The Court denied the motion, in part, due to Blackwell's extensive criminal record, which included multiple drug trafficking convictions and a recent conviction for domestic violence. (Doc. No. 165 (Order), at 7 (citing Doc. No. 77 (Pretrial Services Report), at 3–7).) As for Blackwell's medical concerns, the Court determined that medical records from Blackwell's detention facility demonstrated that he was receiving proper medical care for his multiple medical conditions. (*Id*. at 4–5, 7–8.)

During his pretrial incarceration, Blackwell also filed motions seeking medical treatment. (Doc. Nos. 166, 235.) Upon receiving each motion, the Court directed the U.S. Marshals Service to obtain an update from Blackwell's facility regarding his medical care. In each instance, the Court received information indicating Blackwell was receiving appropriate care at his facility, including physical therapy, to manage and treat his various medical conditions. (Doc. (Court Only) emails, 11/9/2022; Doc. No. 236.)

On November 17, 2022, with the benefit of a plea agreement, Blackwell entered a plea of guilty to the crime of conspiracy to possess with intent to distribute and to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846. (Minutes of Proceedings [non-document], 11/17/2022; Doc. No. 223 (Plea Agreement).) At the time of sentencing, the Court recommended that Blackwell be placed in a medical facility so that attention could be given to the aforementioned gunshot wound on his left arm. (Doc. No. 250, at 2.)

---

[2] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

2

On July 9, 2024, Blackwell filed his motion for compassionate release. In his motion, as supplemented, Blackwell maintains that he continues to suffer from diabetic foot ulcers and polyneuropathy from the gunshot wound, and he has also been diagnosed with "kidney failure." (*See* Doc. No. 379, at 3.) He notes that his current facility, FCI Hazelton, is not a medical facility and is not adequately addressing his medical needs. (*Id*. at 3–4.) Blackwell insists that the failure to properly treat his medical conditions "will put him at risk for serious deterioration of his health in the future." (*Id*. at 4.) It is Blackwell's position that his medical conditions create extraordinary and compelling reasons to justify a reduction in his sentence. (*Id*. at 3.)

## II.     LAW AND DISCUSSION

The sentencing court has no inherent authority to reconsider and/or modify an otherwise valid sentence. *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). Instead, the authority of the Court to resentence a defendant is limited by statute. *United States v. Houston*, 529 F.3d 743, 748–49 (6th Cir. 2008) (citing *United States v. Ross*, 245 F.3d 577, 585 (6th Cir. 2001)); *see United States v. Alexander*, 951 F.3d 706, 707 (6th Cir. 2019) ("Generally speaking, once a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute.") Under 18 U.S.C. § 3582(c), a court may only modify a term of imprisonment under the following circumstances: (1) upon a motion of the Director of the BOP or defendant for compassionate release; (2) as expressly permitted by statute or by Fed. R. Crim. P. 35; or (3) where a defendant has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission. § 3582(c)(1)–(2).

Blackwell does not seek relief under Rule 35, nor does he claim that he was sentenced to a

term of imprisonment based on a sentencing range that was subsequently lowered. Instead, he claims that he is entitled to a compassionate release. Under § 3582(c)(1)(A), a district court may grant a sentence reduction "only if it finds that the defendant satisfies three requirements: (1) 'extraordinary and compelling reasons warrant such a reduction'; (2) the 'reduction is consistent with applicable policy statements issued by the Sentencing Commission'; and (3) the relevant § 3553(a) factors support the reduction." *United States v. Hunter*, 12 F.4th 555, 561 (6th Cir. 2021) (quoting § 3582(c)(1)(A)(i); *United States v Elias*, 984 F.3d 516, 518 (6th Cir. 2021)); *see United States v. Jones*, 980 F.3d 1098, 1101 (6th Cir. 2020). Additionally, exhaustion of administrative remedies is a mandatory claims-processing rule that must be satisfied before a defendant may seek compassionate release. *United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020) (citations omitted).

The policy statement applicable to compassionate release motions, U.S.S.G. § 1B1.13, was recently amended (effective November 1, 2023) and describes six categories of extraordinary and compelling reasons that individually, or in combination, may support a request for compassionate release. These categories are: (1) medical circumstances of the defendant; (2) the age of the defendant; (3) a defendant's family circumstances; (4) sexual or physical abuse suffered by the defendant while in custody involving a "sexual act" or "serious bodily injury"; (5) "other reasons" similar in gravity as those articulated in (1)–(4); and (6) an "unusually long sentence." § 1B1.13(b).

The parties dispute whether Blackwell has exhausted his administrative remedies. Blackwell maintains he "submitted his request for compassionate release to the warden over 30 days ago, and he has not received a response." (Doc. No. 379, at 2; *see* Doc. No. 351-1, at 4 (claiming he "hand[ed his] 'compassionate release' request to Unit Mgr. McCall whom [sic]

4

process [sic] to the Warden who refused to acknowledge[.]" (all text and emphasis in original)).) He appends to his motion a partially completed "Request for Reduction in Sentence Form[,]" which contains handwritten printing across the top of the first page providing "3-18-34 to Unit Mgr. McCall." (Doc. No. 351-2, at 1.) The government represents, however, that it contacted the BOP and was advised that the warden of Blackwell's facility never received this form or any request from Blackwell for a compassionate release. (Doc. No. 393, at 5.) The government further represents that it contacted Unit Manager McCall at Blackwell's facility, who also confirmed that no such form was ever received from Blackwell. (*Id*.) The government advises that it "now properly raises the rule requiring [Blackwell] to first present his request for compassionate release to the warden and to wait the 30-day period." (*Id*. at 7.)

As the party seeking a compassionate release, it is Blackwell's burden to show that he is entitled to relief, including that he has properly exhausted his administrative remedies. *See United States v. Williams*, 458 F. Supp. 3d 939, 943 (W.D. Tenn. 2020) ("The defendant bears the burden of showing he has exhausted his administrative remedies and is entitled to compassionate release." (citations omitted)). While he offers some evidence that he partially prepared a request form, Blackwell's showing fails to rebut the government's representations that the form was never submitted to the warden for his consideration. Because the government has "properly invoked" the mandatory claim-processing rule of exhaustion, and Blackwell failed to carry his burden of establishing exhaustion, the Court is obliged to deny Blackwell's motion on this basis alone. *See Alam*, 960 F.3d at 834 ("When 'properly invoked,' mandatory claim-processing rules 'must be enforced.'" (quoting *Hamer v. Neighborhood Hous. Servs. of Chi*., 583 U.S. 17, 20, 138 S. Ct. 13, 199 L. Ed. 2d 249 (2017))); *see also United States v. Buckingham*, No. 3:19-cr-597, 2024 WL

5

2749297, at *1 (N.D. Ohio May 29, 2024) (finding defendant's evidence of exhaustion did not fully demonstrate that he exhausted with respect to certain medical conditions asserted in his compassionate release motion).

But even if the Court assumed that Blackwell's showing was sufficient to establish exhaustion, he would still have to demonstrate that he was entitled to relief under the compassionate release statute (18 U.S.C. § 3582(c)(1)(A)) and the relevant BOP policy statement. The Court, therefore, turns to a consideration of whether Blackwell has demonstrated the existence of extraordinary and compelling reasons identified in § 3582(c)(1)(A)(i), and discussed in detail in § 1B1.13(b), as amended. Blackwell relies on the first category—medical circumstances of the defendant—to demonstrate that there are extraordinary and compelling reasons justifying a reduction in his sentence. Under § 1B1.13(b)(1), a defendant's own medical condition (or conditions) may satisfy the extraordinary and compelling threshold if the defendant: has a "terminal illness"; suffers from a "serious physical or medical condition," a "serious functional or cognitive impairment," or is experiencing "deteriorating physical or mental health" because of age that "substantially diminishes the ability of the defendant to provide self-care" in his facility and "from which he . . . is not expected to recover"; or is "suffering from a medical condition that requires long-term care or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." § 1B1.13(b)(1).

According to Blackwell, the non-medical facility where he is currently housed is not adequately providing for his serious medical conditions, including diabetic foot ulcers, polyneuropathy, and "kidney failure," that require specialized medical care. (Doc. No. 379, at 3–4; *see* Doc. No. 351-1, at 6 (complaining that FCI Hazelton refuses to send Blackwell to a nerve

specialist or provide him with surgery for his polyneuropathy).) BOP medical records supplied by the government, however, demonstrate that Blackwell is receiving medical care for his multiple conditions, both at FCI Hazelton and at outside medical facilities, and that his conditions are well-managed. (*See generally* Doc. No. 394-1.) For example, BOP records show that Blackwell's diabetic foot ulcers were brought to the attention of the medical staff upon his arrival at FCI Hazelton (*see id*. at 146–60), and that, since that time, Blackwell has received regular examinations and treatment for the ulcers, including X-rays (*id*. at 907–08), treatment by a podiatrist at FCI Hazelton and at outside medical facilities (*id*. at 76–77, 83–105, 121–22, 126–27, 161–68), and ongoing follow-up treatment (*id*. at 1–69, 263–70 (list of daily wound care visits)). Most recently, BOP records show Blackwell was seen at FCI Hazelton's health services for routine wound care, during which he reported he was changing the dressings on his foot ulcer as directed and that the ulcer was "mostly [] closed[,]" with no odor or significant drainage emanating from the wound. (*Id*. at 1.) These records demonstrate that, while the condition is ongoing, it is being adequately managed by the facility and Blackwell is able to provide appropriate self-care.

As for his kidney disease, BOP records show that Blackwell has received a number of medications to treat the underlying conditions that contribute to kidney disease, including high blood pressure. (*Id*. at 279–84.) The records further show that this regimen has significantly improved Blackwell's blood pressure. (*See, e.g., id*. at 170.) These same records also demonstrate that Blackwell's kidney disease has not progressed during his incarceration, as Blackwell remains

7

at Stage 3a,[3] and his eGFR and uACR[4] levels have remained stable. (*Id.* at 40, 124, 295, 307, 318, 325.)

With respect to his polyneuropathy, Blackwell reports that he requires an MRI and surgery but that the BOP has neglected to provide such treatment. (Doc. No. 351-2, at 2; *see* Doc. No. 379, at 3.) Blackwell has failed, however, to point to any medical documentation in the record that supports the need for such treatment. And when Blackwell complained during his pretrial detention that he was not receiving proper care for his polyneuropathy, the Court inquired and was advised by the U.S. Marshals Service that Blackwell was evaluated at the detention facility and it was determined that he required only "physical therapy" to treat his condition. Because the detention facility was providing regular physical therapy sessions, the Court denied the motion for medical care as moot. (Doc. No. 236, at 1–2.) Blackwell has failed to identify any evidence that would show that this condition has changed or worsened, such that more aggressive forms of treatment are now required.

A review of the BOP medical records does not demonstrate that Blackwell suffers from a medical condition (or a combination of conditions) that rises to the level of extraordinary and compelling. Blackwell has not shown that he suffers from a terminal illness or a serious medical condition that substantially diminishes his ability to provide self-care in the prison environment,

---

[3] Blackwell represents that he has "kidney failure." (Doc. No. 379, at 3.) But, according to the Cleveland Clinic, "kidney failure" is associated with Stage 5 chronic kidney disease. By contrast, Stage 3a kidney disease, the most common stage, is associated with diminished organ functioning and signifies "mild to moderate damage." A patient "may notice symptoms at this stage."
*See* https://my.clevelandclinic.org/health/diseases/15096-chronic-kidney-disease, last visited 10/2/2024.

[4] These two laboratory tests (eGFR and uACR) are identified by the National Kidney Foundation as critical for monitoring kidney function and kidney health. The fact that the BOP is closely monitoring Blackwell's condition by regularly performing these important tests is further evidence his kidney disease is being properly managed at his facility.
*See* https://www.kidney.org/kidney-topics/know-your-kidney-numbers-two-simple-tests, last visited 10/2/2024.

nor does he point to any evidence that he is being denied necessary long-term or specialized care. Further, he has not demonstrated that he is at risk of suffering a serious deterioration in his health. Rather, the proffered medical records establish that Blackwell is receiving appropriate medical care and that his medical conditions are well-controlled by his facility. He has, therefore, failed to establish the necessary extraordinary and compelling reasons to justify a sentence reduction.

Even if Blackwell had cleared this initial hurdle, the Court would still have denied his motion because the sentencing factors in § 3553(a) do not favor a sentence reduction. The nature and circumstances of his offense were serious. Blackwell participated in a drug trafficking organization ("DTO") that was responsible for transporting substantial quantities of dangerous illegal drugs into the local community. The Sixth Circuit has recognized that drug trafficking is an inherently dangerous offense. *See United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010) ("To be sure, drug trafficking is a serious offense, that, in itself, poses a danger to the community." (citations omitted)). While Blackwell attempts to minimize his role in the DTO, Blackwell admitted to receiving and transporting over eight pounds (3,628 grams) of methamphetamine into the Akron area for distribution by the DTO. (*See* Doc. No. 223, at 9–16.)

Blackwell also has an extensive criminal history that began in 1994 when he was only 14 years old. (Doc. No. 247 (Final Presentence Investigation Report), at 10–17 ¶¶ 58–82.) Blackwell's adult felony convictions include multiple convictions for possession of cocaine, multiple convictions for trafficking in cocaine, criminal gang activity, and a prior federal conviction for conspiracy with intent to distribute and to distribute cocaine. (*Id.* at 12–17 ¶¶ 70–71, 73, 77, 80 and 82.) His prior convictions also include a misdemeanor conviction for domestic violence. (*Id.* at 17 ¶ 81.) Prior convictions and sentences for drug related offenses have failed to dissuade

Blackwell from engaging in dangerous and illegal activity, such as drug trafficking. (*See, e.g., id*. at 15 ¶ 77 (84-month custody term for conspiracy to possess with intent to distribute and to distribute cocaine).) In fact, as the government correctly notes, Blackwell was on probation in state court for cocaine possession and domestic violence when he committed the instant offense. (Doc. No. 393, at 14 (citing Doc. No. 247, at 18 ¶ 84).)

The Court has considered BOP records that demonstrate that Blackwell has had no disciplinary incidents during his brief period of incarceration. (*See* Doc. No. 351-13 (BOP Individualized Needs Plan), at 1.) It has also considered Blackwell's representations (albeit largely unsubstantiated) that he has a "solid release plan" and "excellent family and friend support to help him reintegrate back into the community." (Doc. No. 379, at 4, 5.) But after considering all of the § 3353(a) factors, the Court finds that a reduction in sentence would undermine the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, and protect the public from further crimes of the defendant. Based on these same facts, the Court also finds that Blackwell poses a danger to the community.

### III. CONCLUSION

For the foregoing reasons, the Court denies defendant's motion, as supplemented, for a compassionate release.

**IT IS SO ORDERED**.

Dated: October 21, 2024

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**